UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 18-cr-00253-JRS-MJD |
| | ) | |
| TYREE HARPER, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by John C. Milhiser, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Ryan Finlen, as Special Attorneys to the United States Attorney General, and the defendant, Tyree Harper, personally and by the defendant's attorney, Stephen G. Gray, have agreed upon the following:

## SCOPE

1.      This document contains the complete and only plea agreement between the United States Attorney General and the defendant. This agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, plea agreements between the parties. No other agreement, understanding, promise, or condition between the United States Attorney General and the defendant exists, except as set forth in this plea agreement.

1

2.      This plea agreement is binding only upon the United States Attorney General and the defendant. In addition, the plea agreement does not bind the Internal Revenue Service of the United States Department of the Treasury.

## THE PLEA

3.      The defendant will enter guilty pleas to Counts 1 and 2 of the superseding indictment, which charge the defendant with attempted possession of 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule I non-narcotic controlled substance, with the intent to distribute it in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(ii) (Count 1) and possession of 50 grams or more of methamphetamine, a Schedule II controlled substance, with the intent to distribute it in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii) (Count 2). The defendant also agrees to forfeit any interest he may have in the United States currency identified in the superseding indictment totaling $116,051 (one hundred sixteen thousand fifty-one dollars), and further agrees not to contest forfeiture of the currency listed in the superseding indictment during any proceedings required to complete the forfeiture process. This agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Therefore, pursuant to Rule 11(c)(1)(C), if the Court rejects the terms of this Plea Agreement as set forth below, this agreement shall become null and void and neither party shall be bound thereto.

## ELEMENTS OF THE CHARGES

4.      The defendant has personally read the indictment and the charges to which the defendant is pleading guilty. The indictment and the charges have been explained to

the defendant by the defendant's attorney. Furthermore, the defendant fully understands the nature and elements of the crimes to which the defendant is pleading guilty.

5.　To sustain the offense of attempted possession of 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule I non-narcotic controlled substance, with the intent to distribute it in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(ii) (Count 1), and for the defendant to the subject to the penalties described below, the United States must prove each of the following propositions beyond a reasonable doubt:

a. First, that the defendant attempted to knowingly or intentionally possess 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine;

b. Second, that the defendant attempted to possess 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine with the intent to distribute the substance to another person; and

c. Third, that the defendant knew the mixture and substance contained some kind of controlled substance. The United States is not required to prove that the defendant knew the mixture and substance contained cocaine.

6.　To sustain the offense of possession of 50 grams or more of methamphetamine with the intent to distribute in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii) (Count 2), and for the defendant to be subject to the penalties described below, the United States must prove each of the following propositions beyond a reasonable doubt:

a. First, that the defendant knowingly possessed 50 grams or more of methamphetamine;

b. Second, that the defendant intended to distribute the substance to another person; and

    c.   Third, that the defendant knew the substance was some kind of controlled substance. The United States is not required to prove that the defendant knew the substance was methamphetamine.

7.    The term "distribute" or "distribution" means the transfer of possession from one person to another.

8.    The term "knowingly" means that the defendant realized what the defendant was doing and was aware of the nature of the defendant's conduct, and did not act through ignorance, mistake or accident.

<u>POTENTIAL PENALTIES</u>

9.    By virtue of the defendant's prior conviction of a serious drug felony and its resulting sentence and the amount of controlled substances involved in the offenses, the defendant understands and agrees that the charge of attempted possession of 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine (Count 1) and possession of 50 grams or more of methamphetamine with the intent to distribute (Count 2), each carry the following potential penalties;

    a.   A mandatory minimum term of 15 years up to a life term of imprisonment;

    b.   Not more than a $20,000,000 fine; and

    c.   Not less than 10 years of supervised release.

10.    The defendant understands that the sentence on each count to which the defendant is pleading guilty may be ordered to be served consecutively (in addition to each other). Consequently, the maximum possible sentence that could be imposed on the combined counts is:

4

    a.   A term of imprisonment up to a term of life imprisonment;

    b.   Not more than a $40,000,000 fine; and

    c.   Not less than 20 years of supervised release up to a maximum life term of supervised release.

11.    The defendant further understands and agrees to pay the mandatory $100 Special Assessment for each count of the Indictment to which the defendant is entering a Plea of Guilty as required under Title 18, United States Code, Section 3013. The defendant agrees to pay this mandatory special assessment at the time of sentencing in a payment acceptable to the Clerk of the United States District Court and understands that the defendant will be required to do so as a condition of this Plea Agreement. Failure to comply with this requirement will not constitute grounds for the defendant to withdraw any plea of guilty.

12.    The defendant further understands that upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

ACCEPTANCE OF RESPONSIBILITY

13.    The United States agrees, based upon the facts currently known by the United States, that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct in accordance with Section 3E1.1 of the United States Sentencing Guidelines and, therefore, a two-level reduction in the offense level is appropriate. Furthermore, the United States agrees that

5

an additional one-level reduction in the offense level is appropriate in accordance with § 3E1.1(b) if the defendant's offense level is 16 or greater because the defendant timely notified the United States of his intention to enter a plea of guilty. Acceptance of personal responsibility shall include cooperating fully with the United States Probation Office in the preparation of a presentence report and not committing any bond violations while on pretrial release, including but not limited to the commission of any local, state or federal offenses.

14.     This agreement does not preclude the United States from changing its position as to acceptance of responsibility if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility in the opinion of the United States. The defendant understands, however, that if the United States changes its position under such a circumstance, the defendant will have the opportunity to withdraw from any previously accepted guilty plea.

15.     The defendant understands that the Court will not be bound under this agreement by the positions of either party and will be free to make its own independent determination concerning the defendant's acceptance of responsibility. Should the Court determine that the defendant has not accepted responsibility, however, the defendant will have the opportunity to withdraw his guilty plea.

<u>ADVISORY SENTENCING GUIDELINES</u>

16.     The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and that the Court will use those calculations to arrive at an advisory

sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guideline range when imposing sentence. The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed. The defendant understands that although the Sentencing Guidelines are advisory, the Court may choose to impose sentence in accordance with the Sentencing Guidelines as set forth in this Plea Agreement.

17. Pursuant to Rule 11(c)(1)(C), the United States and the defendant agree that the following provisions of the Sentencing Guidelines do or do not apply as set forth here:

   a. The type and quantity of controlled substances forming the basis of the Sentencing Guideline calculation include 6,014 grams of cocaine and 4,423 grams of actual methamphetamine.

   b. Pursuant to USSG §§ 2D1.1(a)(5) and 2D1.1 cmt. 8, the quantity of converted drug weight forming the basis of the defendant's Sentencing Guideline calculation totals 89,662.92 kilograms of converted drug weight.

   c. Pursuant to USSG §§ 2D1.1(a)(5) and 2D1.1(c)(2), the defendant's base offense level is 36.

   d. The defendants offense level should be increased by 2 for maintaining a premises for the purpose of distributing a controlled substance, pursuant to USSG § 2D1.1(b)(12).

   e. As fully set forth above and based on the information currently possessed by the parties, the defendant's offense level should be reduced by 2 levels

pursuant to USSG § 3E1.11(a) and an additional 1 level pursuant to USSG § 3E1.1(b).

f.  Based on the information it currently possesses, the United States understands that the defendant has a criminal history category of III. Defendant acknowledges and understands that if, prior to sentencing, the United States discovers that the defendant is in a higher criminal history category, this agreement is voidable in the discretion of the United States. The defendant understands, however, that if the United States voids this agreement under such a circumstance, the defendant will have the opportunity to withdraw from any previously accepted guilty plea; and

g.  The defendant has a total combined offense level of 35 and a criminal history category of III, resulting in a guideline sentencing range of 210 to 262 months of imprisonment located in Zone D of the Sentencing Table.

18.  The defendant understands that pursuant to Rule 11(c)(1)(C), the parties' recommendations and requests bind the Court once the Court accepts this Plea Agreement.

SENTENCING RECOMMENDATIONS AND<br>THEIR EFFECT UPON THE COURT

19.  The United States and the defendant each agree that the appropriate disposition of the case pursuant to Rule 11(c)(1)(C) is for the **defendant to be sentenced to a term of imprisonment not to exceed 222 months**.

20.     The defendant agrees that at the time of sentencing, if the Court accepts the plea agreement, the Court will be bound by the specific sentencing range agreed to by the parties. If the Court rejects the plea agreement, the Court would not be bound by the plea agreement and the defendant would have the opportunity to then withdraw the guilty plea.

<u>STIPULATION OF FACTS</u>

21.     The defendant will plead guilty because the defendant is in fact guilty. In pleading guilty, the defendant stipulates and agrees to the following:

a. Prior to the commission of the instant offense, the defendant on February 16, 2007, was convicted in Marion County, Indiana, case number No. 49-G20-0604-FA-063029 of dealing in cocaine in violation of Ind. Code § 35-48-4-1, an offense punishable by at least ten years imprisonment. As a result of this conviction, the defendant served a term of imprisonment of 5,383 days and was released from incarceration within fifteen years of the commission of the instant offense.

b. On July 27, 2018, a narcotics detection dog alerted to the presence of narcotics emanating from a parcel, while that parcel was at a private shipping company within the Southern District of Indiana, in transit to its delivery address listed as 2264 Salem Park Drive, Indianapolis, Indiana 46239. Based in part on this positive alert, law enforcement agents obtained a valid search warrant from the Marion County Superior Court to search the parcel.

c.  Law enforcement agents executed the search of the parcel and found it to contain a red duffle bag carrying six individually-wrapped bricks of suspected controlled substances. Law enforcement agents field-tested the suspected controlled substance from one of these six, nearly identical, one-kilogram bricks and discovered that the substance tested positive for cocaine.

d.  Law enforcement agents replaced the most of the remaining suspected controlled substances with non-narcotic substances meant to appear like the suspected controlled substances removed. The fake controlled substances were placed back into the package destined for 2264 Salem Park Drive, Indianapolis, Indiana 46239. The parcel was resealed.

e.  Thereafter, at approximately 1:30 p.m., a law enforcement agent posing as a delivery service employee approached 2264 Salem Park Drive, Indianapolis, Indiana 46239 with the parcel. After knocking to deliver the parcel and receiving no response, the law enforcement agent left the parcel directly outside the residence located at 2264 Salem Park Drive, Indianapolis, Indiana 46239.

f.  At approximately 2:00 p.m., the defendant drove up to the residence located at 2264 Salem Park Drive, Indianapolis, Indiana 46239, and backed his vehicle into the driveway. Then, the defendant, who was driving, exited his vehicle along with his passenger, retrieved the parcel from in front of the

residence, and brought the parcel inside the residence located at 2264 Salem Park Drive, Indianapolis, Indiana 46239.

g.  Within fifteen minutes, law enforcement agents executed an anticipatory search warrant of the residence located at 2264 Salem Park Drive, Indianapolis, Indiana 46239, whose authorization was triggered by the defendant's bringing the parcel into the residence. Inside, law enforcement agents found, among other things, the defendant standing next to the parcel which was now opened; the red duffle bag from within the parcel containing the decoy controlled substances; a second red duffle bag containing ten individually-wrapped packages of suspected methamphetamine, each weighing approximately 453 grams; a vacuum sealer; multiple digital scales; a digital currency counter with $17,290 in United States currency; and mail address to the defendant at 11625 Tucker Ct., Indianapolis, IN 46229.

h.  After law enforcement agents executed a valid search warrant for the vehicle the defendant arrived in, agents located another red duffle bag containing $91,990 in United States currency; a FedEx envelope addressed to Tie-Ree Trucking LLC at 11625 Tucker Ct., Indianapolis, IN 46229. Tie-Ree Trucking LLC is an Indiana corporation solely-owned by the defendant.

i.  The DEA laboratory later tested the suspected controlled substance recovered from the parcel and concluded that it contained 5,906 grams of

11

cocaine hydrochloride. The DEA laboratory tested the suspected cocaine actually delivered as part of the controlled delivery and found it contained 108 grams of cocaine hydrochloride. The DEA laboratory also tested the ten individually-wrapped packages of suspected methamphetamine recovered from the residence and concluded they contained a total of 4,423 grams of pure methamphetamine hydrochloride.

### WAIVER OF RIGHTS TO APPEAL AND COLLATERAL ATTACK

22.     The defendant is aware that Title 18 and Title 28 of the United States Code afford the defendant rights to challenge the defendant's conviction and sentence through an appeal and through a collateral attack. The defendant and the defendant's attorney have discussed the defendant's appeal and collateral attack rights, and the defendant understands those rights.

23.     Except as otherwise specified in this plea agreement, in exchange for the United States' recommendations and/or concessions in this agreement, the defendant waives all rights to appeal and/or collaterally attack the defendant's conviction and sentence. The term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and/or restitution order and includes the manner and/or method the district court uses to determine, impose, announce, and/or record the sentence.

24.     The defendant's waiver of appeal and collateral attack rights includes, but is not limited to, the waiver of the right to bring any claim that (A) the statute(s) under which the defendant is convicted or sentenced is unconstitutional, and/or (B) the conduct

12

to which the defendant has admitted does not fall within the scope of the statute(s).

25.     The defendant's waiver of appeal and collateral attack rights does not apply to a claim that the defendant received ineffective assistance of counsel.

26.     The defendant understands that, although the defendant is permitted to raise an excepted claim on appeal and collateral attack, the defendant does not have the right to bring a legally or factually frivolous claim.

27.     The defendant further understands that if the defendant successfully challenges this plea agreement on appeal or collateral attack, the agreement will be canceled. In such an event, both the defendant and the United States will be released from their obligations under this agreement, and any benefits the defendant has received or anticipates receiving under this agreement will be canceled.

28.     That the defendant is permitted to raise an excepted claim on appeal and collateral attack does not prevent the government from raising any applicable defense to such a claim.

<u>ACKNOWLEDGMENT OF VOLUNTARINESS OF WAIVER</u>

29.     The defendant states that he has not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive his rights to appeal or collaterally attack his sentence by his attorney or anyone else. The defendant is waiving those rights because he <u>personally</u> believes it is in his best interest to do so to obtain the benefit of the concessions made by the United States in this agreement. The defendant understands the United States is unwilling to make some of those concessions unless he is willing to waive his rights to appeal or collaterally attack his sentence as part of the bargain. The defendant

13

asks the Court to accept this waiver so he can receive the full benefit of this agreement.

<u>VIOLATION OF AGREEMENT BY DEFENDANT</u>

30.    The defendant further agrees that if the defendant violates the terms of this Plea Agreement the United States has the option to declare the Plea Agreement null and void. In the event the United States exercises its option to declare the Plea Agreement null and void, the United States will be completely released from all of its obligations under this Plea Agreement and the United States will be free to seek to vacate the defendant's conviction and/or sentence, and to file additional charges against the defendant. In the event, however, the United States exercises its option to declare the Plea Agreement null and void, the defendant will be allowed to withdraw from any previously accepted guilty plea.

31.    Whether or not the defendant has violated the terms of the plea agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the plea agreement.

<u>ACKNOWLEDGMENTS OF DEFENDANT AND DEFENSE COUNSEL</u>

32.    The defendant and the defendant's attorney acknowledge that they have reviewed and defendant understands the possible application of Sentencing Guidelines Section 1B1.3 (Relevant Conduct) and Section 1B1.4 (Information to be used in Imposing Sentence).

33.    The defendant understands that by pleading guilty, the defendant is waiving certain rights, including, among others, the following:

14

a.   The right to plead not guilty or persist in the plea of not guilty if already made. If the defendant persisted in a plea of not guilty to the charges the defendant would have the right to a public and speedy trial.

b.   The right to a trial by jury. The defendant has an absolute right to a jury trial. The jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant guilty beyond a reasonable doubt. The defendant could also ask for a trial by the Judge instead of a trial by a jury.

c.   The right to the assistance of counsel at trial. The defendant has the right to be represented by an attorney at every stage of the proceedings, including trial. If the Court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant. By entering a guilty plea pursuant to this Plea Agreement, the defendant will not be represented by counsel at a trial on these charges since there will be no trial.

d.   The right to confront and cross-examine adverse witnesses. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those

witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

e. The right against compelled self-incrimination. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

34.   The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained to the defendant those rights and the consequences of waiving those rights.

35.   Defense Counsel

I have read this Plea Agreement and have discussed it fully with my client, Tyree Harper. I am satisfied that my client fully understands its contents and terms. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty, other than those stated in this written Plea Agreement. I therefore concur in the guilty plea as set forth in this Plea Agreement.

Date: **August 7, 2019**                    **/s/   stephen gerald gray**

                                            Stephen G. Gray
                                            Attorney for the Defendant

36.     Defendant

I have read this entire Plea Agreement carefully and have discussed it fully with my attorney, Stephen G. Gray. I fully understand this Agreement and accept and agree to it without reservation, including the paragraphs labeled "Waiver of Right to Appeal and Collateral Attack."

I am entering into this agreement voluntarily and of my own free will in exchange for, and in order to gain the benefit of, the promises made by the United States. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, express or implied, to influence me to plead guilty, other than those stated in this written Plea Agreement. I am not under the influence of anything that could impede my ability to understand fully this Plea Agreement.

I am satisfied with the legal services provided by my attorney in connection with this case, this Plea Agreement and matters related to it. I further understand that by signing below I am stating I agree with everything stated in this section of the Plea Agreement, and I am accepting and entering into this Plea Agreement in its entirety.

I hereby reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty, except those set forth in this Plea Agreement.

Date: __8/7/19_____          _____
                                  Tyree Harper

17

Defendant

## ACKNOWLEDGMENT OF THE UNITED STATES

37.     United States

I accept and agree to this Plea Agreement for the United States of America.

Date: _Aug. 8, 2019_____     _/s/ Ryan Finlen_____

Ryan Finlen
Special Attorney to the
United States Attorney General

18